IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Case No. 1:18-bk-00062-HWV |
| KEYSTONE PODIATRIC | : | |
| MEDICAL ASSOCIATES, P.C. | : | Chapter 11 |
| Debtor | : | |

## AMENDED PLAN OF REORGANIZATION OF
## KEYSTONE PODIATRIC MEDICAL ASSOCIATES, P.C.

Keystone Podiatric Medical Associates, P.C. (the "Debtor" or "Keystone")

proposes the following Amended Plan of Reorganization (the "Plan") with respect to his

Chapter 11 case:

## ARTICLE I
## DEFINITIONS

Set forth below are various terms which shall, except where the context otherwise

requires, have the respective meanings listed herein. All of the following meanings shall

be applicable to the singular and plural forms of the following defined terms:

**1.1.**

**Accounts Receivable** shall mean sums owed to the Debtor for charges on account

of the Debtor providing services, or rents owed to the Debtor

**1.2.**

**Administrative Claim** shall mean an administrative expense from and after

January 9, 2018, the date on which the Debtor's Chapter 11 Case commenced, which is

entitled to priority in accordance with Section 507(a)(1) of the Code and allowed under Section 503 of the Code.

**1.3.**

      **Administrative Professional Claim** shall mean compensation and reimbursement of professionals, including attorneys, accountants, experts, consultants and realtors as allowed by the Court under Section 330 of the Code.

**1.4.**

      **Allowed Claim** shall mean a Claim which is scheduled pursuant to the Code, or stipulated of record in this Chapter 11 Case, other than a Claim scheduled as disputed, contingent or unliquidated, or which is identified in a Court approved Stipulation filed of record in this Chapter 11 Case, or which has been filed pursuant to Section 502(a) of the Code, and with respect to which no objection to the allowance thereof has been interposed within the time allowed by the Court or Bankruptcy Code, or as to which any objection has been overruled (and to the extent so overruled) by a Final Order. An Allowed Claim shall not include any interest accruing on a Claim except as specifically authorized by the Plan.

**1.5.**

      **Assets** shall mean all of the Debtor's Personal Property.

**1.6.**

      **Cash** shall mean cash and cash equivalents.

**1.7.**

**Cash Collateral Motion** shall mean that Motion filed by the Debtor on January 10, 2018.

**1.8.**

**Cash Collateral Order** shall mean the Order initially entered by the Bankruptcy Court on January 18, 2018 and continued by virtue of Stipulation between the Debtor and MidPenn Bank

**1.9.**

**Centers for Medicare and Medicaid or CMS** shall mean a governmental agency that provides funds for claims under the federal Medicare system providing payments to the Debtor for services provided to various patients of the Debtor.

**1.10.**

**Chapter 11 Case** shall mean the Keystone Podiatric Medical Associates, P.C. proceeding commenced by a voluntary petition under Chapter 11 of the Code at Case No. 1-18-00062 in the United States Bankruptcy Court for the Middle District of Pennsylvania.

**1.11.**

**Claim** shall have the meaning as provided by Section 101(4) of the Code.

**1.12.**

**Code or Bankruptcy Code** shall mean the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. Sections 101, *et seq*., commonly referred to as the Bankruptcy Code.

Case 1:18-bk-00062-HWV    Doc 123    Filed 04/02/19    Entered 04/02/19 17:37:53    Desc
Main Document      Page 3 of 32

**1.13.**

**Contingent Claim** shall mean any Claim for which the Debtor is not directly liable, is listed as contingent on the Schedules, and has not been determined otherwise by a Final Order.

**1.14.**

**Court or Bankruptcy Court** shall mean the United States Bankruptcy Court for the Middle District of Pennsylvania in which Court the Debtor's Chapter 11 case is pending.

**1.15.**

**Debtor** shall mean Keystone Podiatric Medical Associates, P.C., the Debtor in the above Chapter 11 Case.

**1.16.**

**Delage Laden Financial Services or Delage** shall mean a financing company who provided financing for the purchase of ultrasound equipment by the Debtor.

**1.17.**

**Disputed Claim** shall mean any Claim which is listed as disputed on the Schedules, or to which an objection to the allowance thereof has been interposed, and has not been determined otherwise by a Final Order.

**1.18.**

**Effective Date** shall mean the Effective Date of the Plan which date shall be the first day of the month following sixty (60) days after the Confirmation Date becomes

4

final, and shall not have been reversed, stayed, or adversely modified or amended.  The Effective Date is as further set forth in Section 15.2 of  the Plan and such date is subject to the right of the Debtor to request that the Court extend the Effective Date.

**1.19.**

**Final Order** shall mean an Order of the Bankruptcy Court which has not been reversed or stayed and to which:

    a.    The time to appeal or seek review, rehearing or certiorari has expired and no timely appeal has been filed, or

    b.    Any appeal has been finally resolved.

**1.20.**

**MidPenn Bank** shall mean a banking institution located in Central Pennsylvania, which is a secured creditor of the Debtor for equipment financing and for a line of credit.

**1.21.**

**MidPenn Bank Line of Credit** shall mean that line of credit granted by MidPenn Bank to the Debtor and secured on the Debtor's Personal Property, except for vehicles, if any, owed by the Debtor.

**1.22.**

**Novitas Solutions** shall mean a contractor that provides services to CMS.

**1.23.**

**Personal Property** shall mean each Debtor's present and future accounts receivable, chattel paper, securities, partnership interests, motor vehicles, documents,

Case 1:18-bk-00062-HWV    Doc 123    Filed 04/02/19    Entered 04/02/19 17:37:53    Desc
Main Document      Page 5 of 32

equipment, furniture, general intangibles, inventory, and all products and proceeds thereof.

**1.24.**

    **Petition Date** shall mean January 9, 2018.

**1.25.**

    **Plan** means this Plan, and as it may be modified or amended, as is applicable.

**1.26.**

    **Priority Claim** shall mean a Claim, other than an Administrative Claim or Tax Claim, as to which priority in payment is asserted pursuant to Section 507(a) of the Code.

**1.27.**

    **Pro Rata** shall mean the same proportion that a Claim in a particular class bears to the aggregate amount of all allowed Claims in such class.

**1.28.**

    **Richard A. Rogers** shall mean a doctor of podiatric medicine who is the shareholder of the Debtor.

**1.29.**

    **Tax Claim** shall mean a Claim, other than an administrative Claim or a secured Claim, as to which priority in payment is allowed pursuant to Section 507(a)(8) of the Code.

**1.30.**

Any term which is used in this Plan which is not defined herein, but is used in the Bankruptcy Code or found in the Bankruptcy Code, has the meaning assigned to it in the Code.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

Certain Claims and interests in this Case are divided into unclassified groups and are named as Classes for convenience only as follows:

**2.1.   Class 1.      Professional Administrative Costs.**

**2.1.1   Class 1**.  The expenses and Claims of administration for compensation and reimbursement of professionals as allowed by the Court under Section 330 of the Bankruptcy Code.

**2.2**.   **Class 2.      Administrative Claims**.

**2.2.1**   To the extent that they are allowed, all Administrative Claims and expenses of administration, other than those set forth in Class 1 or in any other Class, incurred during the administration of the proceeding, to the extent that same exist.

**2.3.   Class 3.      Priority Tax Claims**.

**2.3.1   Class 3**.      All Claims to the extent that such are allowed pursuant to Section 507(a)(8) of the Code, and as such Claims exist on the date of the filing of the Chapter 11 Petition in this Case, including, but not limited to any Priority Tax Claims of the United States of America, Internal Revenue Service, or any  state or any local taxing

authority, to the extent that any such Claim is not disputed, and entitled to priority status under the Code.

**The classified Claims and interests in this case are divided into classes as follows:**

**2.4.    Class 4.        MidPenn Bank**

**2.4.1**.  The MidPenn Bank Claims are divided into two separate classes, Class 4A and Class 4B as set forth hereinafter.

**2.4.2**.  Class 4A shall be a Claim of MidPenn Bank constituting a line of credit granted by MidPenn Bank to the Debtor and secured on the Debtor's Personal Property, except for vehicles.  It is believed that as of the Petition Date, approximately $209,000.00 was owed to MidPenn Bank on the line of credit.

**2.4.3**.  Class 4B shall be a Claim of MidPenn Bank against the Debtor resulting from equipment financing for an x-ray machine.  It is believed that as of the Petition Date, approximately $7,400.00 is owed to MidPenn Bank as secured upon the x-ray equipment.

**2.5    Class 5.        Delage Laden Financial Services, Inc.**

**2.5.1**.  This class consists of the secured claim of Delage Laden Financial Services with respect to certain equipment financing for the purchase of ultrasound equipment by the Debtor.  As of the Petition Date, approximately $15,800.00 is owed to Delage.

**2.5.1**.  During the course of the case, the Debtor entered into a Stipulation with Delage (the "Delage Stipulation") providing for payment of certain arrears, including

post-Petition arrears to Delage, as well as payment of additional sums owed to Delage on the Delage Claim.

**2.6.     Class 6.         General Unsecured Claims**

**2.6.1**.  All other Claims which are not otherwise classified herein which are Allowed Claims, including all non-priority, unsecured Claims against the Debtor, and which are not disputed or contingent and are liquidated or otherwise have an allowed Claim, as defined in the Bankruptcy Code and the Rules of Bankruptcy Procedure, shall constitute the Class 6 unsecured Claims in this case.

**2.6.2**  Class 6 shall not include any claim of the United States of America, Department of Health and Human Services ("HHS"), for any sums allegedly owed for Medicare services.  The Claim of HHS shall be treated as a lease assumption Claim pursuant to Section 7.4 of this Plan.

**2.7.     Class 7.         Equity Holders**.

**2.7.1**  The equity interest of Richard A. Rogers, DPM, FACFAS, the shareholder of the Debtor.

**ARTICLE III**
**CLASSES NOT IMPAIRED OR UNCLASSIFIED**
**UNDER THE PLAN**

The following classes of Claims are not impaired or are not to be considered classified under the Plan:  Classes 1, 2 and 3.

# ARTICLE IV
## TREATMENT OF UNIMPAIRED CLASSES OR UNCLASSIFIED CLAIMS

The Claims of each of the classes listed as unimpaired or not classified in Article III, shall be paid and satisfied as follows:

**4.1 Class 1. Professional Administrative Claims.**

All Class 1 Claims, as allowed by the Court, shall be paid in cash on or before the Confirmation Date of this Plan or as otherwise agreed in writing by the claimant and the Debtor. The funds otherwise owed to professionals which the Court has not yet approved and are required by the Code to be approved by the Court shall be escrowed until necessary approvals have been obtained. The provisions of this Section 4.1 are also subject to the terms of Article XIV of this Plan.

**4.2 Class 2. Administrative Claims.**

**4.2.1**. All Class 2 Claims, as allowed by the Court shall be paid as they become due in the ordinary course of business, on or before the Effective Date of this Plan, or as soon as is reasonably possible thereafter, or as otherwise agreed by the claimant and the Debtor, whichever of these dates shall occur later.

**4.3. Class 3 Priority Tax Claims**

**4.3.1** All priority tax Claims in Class 3 of all taxing authorities, shall include only pre-Petition taxes and interest accrued to the Petition Date only, and shall not include any penalties. Such penalties do not include any trust fund tax penalties which may have been assessed against the Debtor. All such Claims shall have credited against such Claim any post-Petition payments as to each such Claim. All Priority Tax Claims in Class 3

10

shall be paid in full on or before five (5) years after the Petition Date, together with interest at the rate of 4% per annum, which interest shall begin to accrue as of the Effective Date of the Plan. Such payments will be made on a regular monthly basis, and each such payment shall begin in the first calendar month after the Effective Date of the Plan.

## ARTICLE V
## TREATMENT OF IMPAIRED CLASSES

### 5.1. Class 4A          MidPenn Bank Line of Credit

**5.1.1** MidPenn Bank granted the Debtor a line of credit ("MidPenn Line of Credit"). In return, MidPenn Bank received a security interest in all Personal Property of the Debtor, including accounts receivable, but excluding vehicles, and subject to any purchase money security interests. As of the Petition Date, MidPenn Bank was owed approximately $209,000.00.

**5.1.2** The Debtor is believed to have been making payments as to the MidPenn Line of Credit during the case. The Debtor will continue to pay the MidPenn Line of Credit, after the Effective Date, as set forth below. Interest shall accrue on the MidPenn Line of Credit, as of the Effective Date, at the regular contractual, non-default rate set forth in the loan documents between the Debtor and MidPenn Bank. In the event there are any arrearages owed to MidPenn Bank on the MidPenn Line of Credit, such arrearages will be added to the principal balance then owed on such line of credit (the "New MidPenn Line of Credit") and, as is necessary, the sum then owed as to the New MidPenn Line of Credit will then be paid with interest, at the regular contractual, non-

11

default rate set forth in the agreement between the Debtor and MidPenn Bank. Late charges will not be paid or included in the balances owed on the New MidPenn Line of Credit. Notwithstanding the foregoing, if not sooner paid, the New MidPenn Line of Credit shall have a seven (7) year term after the Effective Date and shall be paid in full after the period of seven (7) years.

**5.1.3** MidPenn Bank will retain its security interest in the Debtor's assets as exists pre-Petition under the loan agreements between the Debtor and MidPenn Bank until such time as the New MidPenn Line of Credit is paid in full. Upon such New MidPenn Line of Credit being paid in full, the security interest held by MidPenn Bank shall be released by MidPenn Bank and shall be deemed satisfied.

**5.2. Class 4B          MidPenn Bank Equipment Loan**

**5.2.1** MidPenn Bank has a loan which provided purchase money financing for certain digital x-ray equipment (the "MidPenn Equipment Loan"). Such loan was believed to be in the amount of approximately $7,420.00 as of the Petition Date.

**5.2.2** The Debtor has been making payments on the MidPenn Equipment Loan during the pendency of the Case. The Debtor will continue to pay the MidPenn Equipment Loan, after the Effective Date, as set forth below. Interest shall accrue on the MidPenn Equipment Loan, beginning on the Effective Date, at the regular contractual, non-default rate as set forth in the loan documents between the Debtor and MidPenn Bank. In the event there are any arrearages owed to MidPenn Bank as to principal payments on the MidPenn Equipment Loan, such arrearages will be added to the term of

the MidPenn Equipment Loan which will be extended for a sufficient period of time (the "New MidPenn Equipment Loan") and, as is necessary, the sum then owed on the New MidPenn Equipment Loan will be paid at the regular contractual, non-default rate as set forth between the Debtor and MidPenn Bank over the new term of such New MidPenn Equipment Loan. Late charges will not be paid or included on the balance owed on the New MidPenn Equipment Loan. It is believed that the MidPenn Equipment Loan will be paid in full during 2018.

**5.2.3** Until such time as the New MidPenn Equipment Loan is paid in full, MidPenn Bank shall retain its security interest in the digital x-ray equipment of the Debtor.

### 5.3. Class 5.          Delage Laden Financial Services, Inc.

**5.3.1** As of the Petition Date, the loan (the "Delage Loan") was believed to be in the amount of approximately $15,800.00.

**5.3.2** The Debtor has been making payments on the DeLage loan during the pendency of the Case. Beginning in August, 2018, the Debtor has made monthly payments to Delage in the amount of $631.34 each. Such payments are intended to pay any pre and post-Petition arrearages on the Loan owed to Delage on account of its secured loan. The Debtor will continue to pay the DeLate loan after the Effective Date. Interest shall accrue on the DeLage Loan beginning on the Effective Date, at the regular contractual, non-default rate as set forth in the loan documents between the Debtor and

Case 1:18-bk-00062-HWV    Doc 123    Filed 04/02/19    Entered 04/02/19 17:37:53    Desc
Main Document        Page 13 of 32

DeLage.  Any arrearages on the Delage Loan are to be paid by the payments set forth above and  will continue to be paid by the Debtor.

**5.3.3**   Until such time as the DeLage Loan is paid in full, DeLage shall retain its security interest in the ultrasound equipment of the Debtor.

## 5.4. Class 6.          General Unsecured Creditors

**5.4.1**   Class 6 shall include all other Claim holders of the Debtor who are not otherwise classified under the Plan, including all general unsecured creditors.  It should be noted that Class 6 does not include any Claim of HHS for sums which may be owed under the Debtor's Provider Agreements with HHS for Medicare services.  Class 6 specifically excludes any alleged sums owed to the United States of America, Department of Health and Human Services or alleged Medicare overpayments or charges owed by the Debtor, except as may be set forth in Article VII hereinafter.

**5.4.2**   Beginning six (6) months after the Effective Date, the general unsecured creditors shall be paid 5% of each allowed Class 6 Claim, payable in five (5) equal annual installments of one percent (1%) each.

## 5.5. Class 7          Equity Holder

**5.5.1**   The Debtor's equity is held by Richard A. Rogers.   Dr. Rogers will continue to hold such equity subsequent to the Effective Date of the Plan, provided, however, that as of the Effective Date, the Debtor retains the right to cancel the equity and issue new equity in the same amount and percentages as exist pre-Petition.

14

## ARTICLE VI
## MEANS FOR EXECUTION OF THE PLAN

### 6.1. Operations of the Debtor

The Debtor intends to continue to operate its podiatric medical business. The Debtor will bill its patients and collect its various receivables, including any insurance proceeds and any Medicare and Medicaid proceeds.

The Debtor believes that it generates sufficient income from its operations to provide for sufficient cash to fund the Plan of Reorganization.

### 6.2 Sale of Assets

The Debtor retains the right to sell any of its Assets. In the event that a sale occurs, after payment of the MidPenn Bank Equipment Loan and the DeLage Loan, MidPenn Bank shall be then paid as to the New MidPenn Loan. Thereafter, creditors shall be paid in the order of priority pursuant to priorities set forth in the Bankruptcy Code. The Debtor is, however, not required to sell any Assets.

## ARTICLE VII
## EXECUTORY CONTRACTS

### 7.1. Office Leases

The Debtor has the following office leases:

> a. 23 N. Main Street, Biglerville, Pennsylvania from Dr. James Spretzel;
> b. 5001 Louise Drive, Suite 104, Mechanicsburg, Pennsylvania from Linlo Properties VIII, LP;
> c. 845 Sir Thomas Court; Harrisburg, Pennsylvania from 845 Associates, LLC; and
> d. 6100 Old Jonestown Road, Harrisburg, Pennsylvania from First Step Properties.

15

(All of the foregoing are the "Office Leases".)

During the course of the Case, such Office Leases have been assumed. To the extent that such Office Leases have not been assumed, such Office Leases shall be assumed upon confirmation of the Plan.

### 7.2.   X-ray Equipment Lease – One World Business Finance, LLC
The Debtor has a lease of x-ray equipment from One World Business Finance, LLC. Such lease has been paid in full during the Case. To the extent that such lease still exists, the Debtor will assume such lease upon confirmation of the Plan.

### 7.3.   Photocopier Maintenance Agreement – Toshiba Business Solutions, USA

The Debtor has a photocopier maintenance agreement with Toshiba Business Solutions, USA. To the extent that such lease still exists, the Debtor will assume such lease upon confirmation of the Plan.

### 7.4   Medicare Provider Agreement

The Provider Agreement between the Debtor and ("HHS") for Medicare services, is assumed under the Plan upon confirmation of the Plan. Pursuant to an agreement reached between the Debtor and HHS, and as set forth in a Stipulation (the "HHS Stipulation") entered into by the Debtor and HHS, and as approved by the Court, the Debtor shall pay the total sum of $275,000.00, on account of any arrears or any other Claims of HHS against the Debtor on account of the assumption of such Provider Agreement (the "HHS Arrears"). Such sum of $275,000.00 shall be payable over sixty (60) consecutive months, beginning as of the Effective Date of the Plan. The payments

shall be recouped by HHS from the Debtor's Medicare payments otherwise owed to the Debtor, beginning on or after the Effective Date. The recoupment shall continue until the total sum of $275,000.00 is recouped or paid to HHS on account of the HHS Arrears. The terms of the HHS Stipulation are incorporated herein. To the extent there is any conflict between Section 7.4 of the Plan and the HHS Stipulation, the terms of the HHS Stipulation are controlling.

**7.5    Insurance Agreements for Services**

Any agreement between the Debtor and health insurance company providers, whereby the Debtor provides services to covered insureds of each such insurance company, and which provides for payments and reimbursements to the Debtor by such insurance companies, to the extent that any such agreements exist, and to the extent that such are executory contracts, are assumed upon confirmation of the Plan.

**7.6    Insurance Contracts Provided as to the Debtor's Assets and Operations**

Any contract for insurance providing for insurance coverage as to the Debtor's assets or as to its business operations, or employees, as may exist and as may be in effect as of the Confirmation Date will be assumed upon confirmation of the Plan until terminated under the terms of any such insurance agreement.

**7.6.    Other Contracts**

Any leases for cell phone use or any other licenses or utility agreements are assumed under the Plan. Any other contracts or leases not specifically set forth in this Article VII, shall be rejected as of the Effective Date of the Plan.

**7.7. Arrearages**

Any lessor, to the Debtor, or contract party which believes it may have a claim for arrearages for any lease or contract assumed hereunder must provide the amount of such arrearages to the Debtor within thirty days after Confirmation of the Plan.

**7.8. Rejection Claim**

Any Claim based upon a rejected contract or lease shall be required to be filed on or before twenty (20) days subsequent to the Confirmation Date of the Plan or such Claim shall be deemed barred. Such as otherwise set forth in this Plan, all such Claims shall be under and pursuant to and subject to the provisions of Section 365 of the Code.

**ARTICLE VIII**
**PROCEDURE FOR RESOLVING DISPUTED CLAIMS**

**8.1. Objections to Claims**.

The Debtor reserves the right to object to any Claims as filed with the Court. The time period for the Objections to Claims may be set by the Court at the Confirmation Hearing or at such other date. Any Objections shall be served upon the holder of the Claim to which an Objection is made.

**8.2. Prosecution of Pending Objections to Claims**.

Objections to Claims that are pending as of the Confirmation Date, or were made after the Confirmation Date, shall be prosecuted after the Confirmation Date. The objecting party shall have the discretion to litigate to judgment, settle or withdraw Objections to disputed Claims.

Case 1:18-bk-00062-HWV    Doc 123    Filed 04/02/19    Entered 04/02/19 17:37:53    Desc
Main Document    Page 18 of 32

**8.3. Payment of Disputed Claims**.

Except as may be otherwise agreed with respect to any disputed Claim, no payments shall be paid with respect to all or any portion of a disputed Claim unless and until all Objections to such disputed Claim have been determined by a final Order. Payments and distributions to each holder of a disputed Claim, to the extent that it ultimately becomes an allowed Claim shall be made in accordance with the provisions of this Plan. Upon resolution of the disputed Claim, final distribution, pro rata, shall occur. The Debtor reserves the right to propose a payment schedule as to any such disputed Claim which differs from that of other unsecured Claim holders.

**8.4. Payments to Unsecured Creditors**.

Payments to Unsecured Creditors shall occur through the Debtor or through the Debtor's bankruptcy attorneys, Cunningham & Chernicoff, P.C., which firm shall be permitted to impose a reasonable charge upon the distribution to unsecured creditors for such services.

**ARTICLE IX**
**RETENTION AND ENFORCEMENT OF CLAIMS**
**BELONGING TO THE ESTATE**

**9.1.**

All preference Claims pursuant to Section 547 of the Code, all fraudulent transfer Claims pursuant to Section 548 of the Code, all Claims relating to post-Petition transactions under Section 549 of the Code, all Claims recoverable under Section 550 of the Code, all Claims against a third party on account of an indebtedness, and any other

19

Claims owed to or in favor of the Debtor, are hereby preserved and retained for enforcement subsequent to the Effective Date of the Plan by the Debtor.

**ARTICLE X**
**CONFIRMATION REQUEST**

**10.1. Impaired Classes to Vote**.

Only Classes of creditors and interest holders that are impaired shall be entitled to vote as a Class to accept or reject the Plan. Those Classes of creditors which are not impaired or are not classified, that is Classes 1, 2 and 3, shall not be permitted to vote on the Plan.

**10.2. Acceptance by a Class of Creditors**.

A Class of creditors shall have voted to accept the Plan if the Plan is accepted by creditors of such Class that holds at least two-thirds (2/3) of the aggregate dollar amount, and more than one- half (½) in number of the allowed Claims of creditors of such Class that vote to accept or reject the Plan.

**10.3. Confirmation Request**.

If one or more impaired Classes of Claims or interests fails to accept the Plan under Section 1126 of the Code and all of the applicable requirements of Section 1129(a) of the Code have been satisfied other than Section 1129(a)(8) of the Code, the Debtor requests that the Court confirm the Plan pursuant to the provisions of Section 1129(b) of the Code as it applies to Claims and Interests. Further, in the event that the Class 11, Unsecured Creditors, has not accepted the Plan in the requisite numbers which are necessary and required under Section 1126 of the Code, then as part of the confirmation

Case 1:18-bk-00062-HWV    Doc 123    Filed 04/02/19    Entered 04/02/19 17:37:53    Desc
Main Document    Page 20 of 32

process and in a motion to request confirmation, the Debtor may make available to other parties the right to bid for the equity of the Debtor in his assets, provided that any such bid is on certain terms and conditions. Included in such terms and conditions is the requirement that any obligation or guarantee by the current equity holder, Richard Rogers, of the Debtor's obligations to its various creditors be removed or replaced by new obligors acceptable to any such creditor. Any such acquisition of the equity will also have the requirement that any payment by such acquiring party indemnify the Debtor as to secured debt. The Debtor may also place new value into his estate by a cash infusion from new loans. These requests will be part of the procedure under the Confirmation process in the event that the requisite number of votes under Section 1129 of the Code in favor of the Plan does not occur.

## ARTICLE XI
## DISCHARGE

**11.1**.

The entry of an Order of the Bankruptcy Court confirming this Plan acts as a discharge, effective as of the Effective Date, of any and all debts of Keystone Podiatric Medical Associates, P.C., pursuant to Section 1141 of the Bankruptcy Code, including, but not limited to all principal and interest of discharged Claims. All creditors are limited, pursuant to Section 1141 of the Code, and pursuant to this Plan, to the remedies provided by this Plan and the Code for all Claim holders and equity holders, including contingent and disputed Claims which are not otherwise allowed Claims, and including any lease or executory contract rejection Claims.

21

# ARTICLE XII
# INJUNCTION

**12.1**.

All creditors of the Debtor are limited, pursuant to Section 1141 of the Code, to the treatment provided by this Plan and the Code for all Claim holders and equity holders, including contingent and disputed Claims which are not otherwise Allowed Claims. Further, as of the Effective Date, this Plan shall act as an injunction against and shall enjoin all holders of a debt held by a Claim holder, whether or not (i) a proof of Claim based on such debt is filed or deemed filed under Section 501 of the Code; (ii) such Claim is allowed under Section 502 of the Code; or (iii) the holder of such Claim has accepted the Plan; from seeking payment of such Claim from the Debtor, other than as set forth in this Plan. The remedy for the breach of a provision of this Plan shall be an action in this Bankruptcy Court. The stay shall remain in effect as to any action against the Debtor through the Effective Date, when it is replaced by the injunction in this Section and Sections 524(a) and 1141 of the Code; and Claim holders are limited to the remedies set forth herein, under the Code and under applicable law. In the event that any Claim holder believes that a debt has not been paid as required under the Plan, such Claim holder is limited to remedies as provided under the Bankruptcy Code and applicable law.

Further, in the event of non-payment under this Plan, no default may occur until after the expiration of twenty (20) days after receipt of notice of such non-payment has been received by the Debtor and its counsel, Cunningham & Chernicoff, P.C., Debtor's

Case 1:18-bk-00062-HWV    Doc 123    Filed 04/02/19    Entered 04/02/19 17:37:53    Desc
Main Document    Page 22 of 32

counsel, without cure of the non-payment. Such notice is to be forwarded to Debtor's counsel at the address set forth at the end of this Plan.

**ARTICLE XIII**
**REVESTING**

**13.1**.

On the date Effective Date, the Debtor shall be revested with all of its property then existing, free and clear of all Claims, liens and encumbrances arising prior to the date of the entry of the Confirmation Order, except as limited by Article V of the Plan. Under Article V of the Plan, the MidPenn Bank lien on the Debtor's Personal Property, except for vehicles, the MidPenn Bank lien on the Debtor's x-ray equipment purchased with the MidPenn Equipment Loan and the Delage Laden Financial Services, Inc. lien on the ultrasound equipment purchased with the funding from Delage, shall be retained by each respective Claim holder, as set forth in Article V of the Plan.

**ARTICLE XIV**
**PROFESSIONALS**

**14.1**.

The Class 1 professional administrative Claim holders are believed to be Cunningham & Chernicoff, P.C., counsel to the Debtor, and Gift CPA's, accountant to the Debtor.

**14.2**.

All allowed costs of administration for professionals shall be paid as set forth in Section 4.1 of the Plan. All professionals employed by the Debtor shall continue to be employed and to be entitled to compensation from the estate for their services after the

Effective Date on a regular ongoing basis. To the extent that any approvals are necessary which have not occurred as to any professional services, and such approval has not yet been entered by the Court, then an amount is to be escrowed and set aside on the Confirmation Date. To the extent that any services have been performed by professionals subsequent to the Confirmation Date of this Plan or any modification of this Plan, or the Debtor employs new professionals Post-Confirmation, such services and payments will not be subject to the review and approval of the Court. All reasonable fees for professionals shall be paid in the ordinary course by the Debtor.

**ARTICLE XV**
**MISCELLANEOUS**

**15.1**.

The Debtor is requesting a bar date for Claims. Notice will be provided to creditors.

**15.2**.

The "Effective Date of the Plan" will be the first day of the calendar month following sixty (60) days after the Confirmation Order becomes final, and shall not have been reversed, stayed, or adversely modified or amended. Such date shall be subject to the right of the Debtor to request that the Court extend the Effective Date.

**15.3**.

Upon the Confirmation Order becoming a Final Order, the Debtor, its creditors and Claim holders, and equity interest holders shall be legally bound by the Plan, whether or not they have accepted the Plan.

Case 1:18-bk-00062-HWV    Doc 123    Filed 04/02/19    Entered 04/02/19 17:37:53    Desc
Main Document      Page 24 of 32

**15.4**.

The transfer of any assets including any real estate, if any, during the pendency of this case, or after Confirmation, shall constitute a transfer under this Plan within the purview of Code Section 1146(c) and shall not be subject to transfer, stamp or similar taxes under any law.

**15.5**.

All quarterly fees due and owing to the United States Trustee under 28 U.S.C. §1930 for the period of time up to Confirmation shall be paid pursuant to Article IV, Section 4.2 of the Plan when due. All quarterly fees for the U.S. Trustee for the period after confirmation of the Plan shall be paid pursuant to Section 15.6 below and in the ordinary course.

**15.6**.

The Debtor may seek as soon as possible, upon proper Motion, for the closing of the case in accordance with the provisions of the Bankruptcy Code and dependent upon the activity in the case and as to the Plan. Until such time as the Court, upon Motion, orders the closing of the case, the Debtor shall be subject to such provisions as are relevant as to the payment of quarterly fees to the Office of the U.S. Trustee.

**15.7**.

Any and all Claims which are listed in the Bankruptcy Schedules as disputed, contingent or unliquidated, and for which no proper Proof of Claim has been filed prior to a claims bar date, shall be disallowed, and shall not be entitled to vote on the Plan, including any rejection Claims on account of any leases or executory contracts. If there

is an objection pending as to a Claim when voting is to occur, such Claim holder shall not have its Claim considered for voting purposes until such Claim is allowed by the Court. Further, the Notice and Order approving the Disclosure Statement may contain therein a notice providing for a bar date for the filing of a proper Proof of Claim.

**15.8**.

Any Class that is unimpaired or not classified shall not vote on the Plan and the Debtor, at its option, shall not be required to send a Disclosure Statement and Plan to Claim holders in such Class.

**15.9**.

Any amount set forth by a Claim holder on any ballot solicited in this case and voted by a Claim holder shall not be binding upon the Debtor, but rather, the amounts scheduled by the Debtor, if not disputed, contingent or unliquidated, or as set forth in a Proof of Claim filed by a Claim holder, as allowed by the Court, shall control the amount of a creditor's Claim for purposes of voting on the Plan, or distribution under the Plan. Further, in the event that a creditor sets forth an incorrect Class for its Claim on any ballot voted on this Plan, then the Debtor reserves the right to correct such ballot to set forth the proper Class. Except as previously resolved by a Final Order, the Debtor reserves the right to object to any and all Claims filed in this Case, including any late filed Claims, which Claims are filed after the bar date established by the Court. Unless a Court Order provides otherwise, late filed Claims will not share in any distribution under the Plan.

Case 1:18-bk-00062-HWV    Doc 123    Filed 04/02/19    Entered 04/02/19 17:37:53    Desc
Main Document    Page 26 of 32

**15.10**.

Except to the extent that the Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Pennsylvania.

**15.11**.

In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, the provisions of the Plan shall control and take precedence, subject, however, to any Order previously entered in this Case.

**15.12**.

The automatic stay of 11 U.S.C. §362 shall remain in effect as under Section 12.1 of the Plan and subject to the injunction set forth in Section 12.1 of the Plan, and under the Bankruptcy Code.

**15.13**.

After the Effective Date, the Debtor may, and so long as it does not materially and adversely affect the interests of any claimant, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Order Confirming the Plan, and such matters as may be necessary to carry out the purposes and effect of the Plan and without leave of the Court, except as required by the Plan or the Code.

**15.14**.

After the Effective Date, the Debtor may take such actions as necessary to effectuate the Plan without leave of Court, except as required by the Plan or the Code.

**15.15**.

Pursuant to Sections 105, 524, or 1141 of the Bankruptcy Code, upon the Effective Date, Debtor's counsel and professionals shall be deemed released and held harmless in connection with any Claims, charges or liabilities arising directly or indirectly in connection with their service during the Chapter 11 cases, or the representation of the Debtor, except to the extent such liability arose out of fraud, willful or reckless conduct.

**15.16.**

The Debtor and his employees or agents (including the professionals and any other professionals retained by such persons) shall have no liability to any holder of a Claim or equity interest for any act or omission in connection with, or arising out of the formulation of the Plan, the pursuit of approval of the Disclosure Statement for the Plan, or the solicitation of votes for or confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence and, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. Nothing contained in this Section shall be deemed to cause a release of any personal guarantee of any party, as to any of the Claims against the Debtor, to the extent that such exist. The Release contained herein is intended to be only with respect to the Plan and Disclosure Statement process.

**15.17**.

For purposes of payments under the Plan to all Claim holders, the Disbursing Agent shall be the Debtor or its counsel, with respect to unsecured creditors. If counsel to the Debtor is the disbursing agent, it may charge a reasonable fee for disbursement. The Debtor will pay secured creditors.

**15.18**.

Any distribution under the Plan that is returned as undeliverable shall be retained by the Debtor after any applicable period of time for retention has expired.

## ARTICLE XVI
## PRIOR ORDERS OF THE BANKRUPTCY COURT

**16.1**.

Prior Orders of the Bankruptcy Court in the Chapter 11 case are incorporated in this Plan and made a part hereof, to the extent not inconsistent herewith.

## ARTICLE XVII
## MODIFICATION OF THE PLAN

**17.1. Before Confirmation**.

At any time prior to Confirmation, the Debtor may propose amendments or modifications of the Plan at any time, but such modification may not cause the Plan, as modified, to fail to meet the requirements of Sections 1122 and 1123 of the Bankruptcy Code. If the Debtor files a modification or amendment with the Bankruptcy Court, the Plan as modified or amended shall become the Plan.

**17.2.  After Confirmation**.

At any time after Confirmation, the Debtor may, and so long as it does not materially or adversely affect the interests of creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan, or in the Order of Confirmation, in such manner as may be necessary to carry out the purposes and effect of the Plan.  Further, the Debtor may, with approval of the Court, after notice and hearing, modify or amend the Plan to the extent it may materially or adversely affect creditors, and if the Court confirms such Plan as modified or amended, such modified or amended Plan shall become the Plan.

## ARTICLE XVIII
## JURISDICTION OF THE COURT

**18.1.**

The United States Bankruptcy Court for the Middle District of Pennsylvania will retain jurisdiction until this Plan has been fully consummated, or as otherwise Ordered by the Court, notwithstanding the administrative closing of the Chapter 11 Case, including, but not limited to the following purposes:

> a.     The classification of the Claim of any creditor and the re-examination of Claims which have been allowed in this case, and the determination of such objections as may be filed to creditors' Claims including as to the amount of any Claim or Administrative Claim.  The failure by the Debtor to object to, or to examine any Claim for the purposes of voting on any plan, shall not be deemed to be a waiver of the Debtor's right to object to, or re-examine the Claim in whole or in part.

> b.     Determination of all questions and disputes regarding title to the assets of the Debtor's estate, and determination of all causes of action, controversies, disputes, conflicts, whether or not subject to action pending as of the date of confirmation, between the Debtor and any other party, including, but not limited to any right of the Debtor to recover assets,

including accounts receivable, preferences and fraudulent conveyances, pursuant to the provisions of the Bankruptcy Code.

c. The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan or the Order of confirmation as may be necessary to carry out the purposes and intent of this Plan.

d. The modification of this Plan after confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code and pursuant to this Plan.

e. To enforce and interpret the terms and conditions of this Plan.

f. To approve, if necessary, the sale of any assets of the Debtor upon such terms and conditions to be set forth in the proposed sale.

g. To enter any order, including injunctions, necessary to enforce the title, rights, and powers of the Debtor and to impose such limitations, restrictions, terms, and conditions of such title, rights, and powers as this Court may deem necessary, and to enforce the terms and provisions of this Plan.

h. To determine any and all applications, motions, adversary proceedings and contested matters, whether pending before the Court on the Effective Date, or filed or instituted after the Effective Date, including, without limitation, proceedings to recover voidable transfers under the Code or other applicable law.

Case 1:18-bk-00062-HWV   Doc 123   Filed 04/02/19   Entered 04/02/19 17:37:53   Desc
Main Document      Page 31 of 32

Debtor:

**KEYSTONE PODIATRIC MEDICAL ASSOCIATES, P.C.**

By: _____

Richard A. Rogers, DPM, FACFAS

Date: 04/02/2019

**Debtor's Counsel:**

Robert E. Chernicoff, Esquire
Cunningham, Chernicoff & Warshawsky P.C.
2320 North Second Street
P. O. Box 60457
Harrisburg, PA 17106-0457
(717) 238-6570